UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IMELDA ALCIVAR

                      MEMORANDUM & ORDER

                  Plaintiff,
   -against-

                      17-CV-2275 (ILG)

ENHANCED RECOVERY COMPANY

                  Defendant.
-----------------------------------------------------------x

GLASSER, Senior United States District Judge:

      Plaintiff Imelda Alcivar filed this action against Defendant Enhanced Recovery Company, alleging violation of the Fair Debt Collection Practices Act ("FDCPA"). (ECF No. 1). On November 7, 2018, the parties voluntarily dismissed the case with prejudice, on the condition that Defendant be permitted to move for attorneys' fees at a later time. (ECF No. 42).

      Pending before the Court is Defendant's motion to recover attorneys' fees and costs under various statutes and this Court's inherent authority. (ECF No. 44). For the reasons stated below, Defendant's motion is **GRANTED**. The Court awards $33,916.84 in attorneys' fees and $2,769.14 in costs, in accordance with the billing records submitted by Defendant's counsel. (ECF No. 45-1).

## FACTUAL BACKGROUND

      Plaintiff is a Brooklyn resident who owed approximately $1,100 to AT&T.[1] Defendant is a collection agency. (Compl. ¶¶ 1–5). Desiring to improve her credit score, Plaintiff engaged credit specialist Tawanda Frazier to assist her. Frazier telephoned the Defendant, and informed its representative that Plaintiff was disputing the debt. Frazier also asked whether the dispute should be submitted in writing, or if an oral dispute would suffice. Defendant's representative accepted

---

[1] The factual record is inconsistent on the precise amount owed, but it is somewhere between $1,097 and $1,197. (*Compare* Compl. ¶ 13 *with* Answer ¶ 13).

1

the oral dispute, but added that Plaintiff still had to submit a written dispute with documentation. (*Id*. ¶¶ 11–17).[2]

These uncontested facts formed the basis of Plaintiff's complaint, which was prepared by M. Harvey Rephen & Associates ("Rephen Firm").[3] (*Id*. at 1). Citing statutes of dubious applicability,[4] the complaint alleged two FDCPA violations. First, 15 U.S.C. § 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." The complaint alleged that this statute requires debt collectors to affirmatively notify credit bureaus after a debtor files a dispute, and that Defendant did not do so. (Compl. ¶¶ 19–20). Second, 15 U.S.C. § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." The complaint further alleged that Plaintiff had the right to dispute her debt orally, and that Defendant's request for a written dispute was a false representation about that right. (Compl. ¶¶ 22–25).[5]

Discovery proved contentious, in two ways. First, Tawanda Frazier refused to comply with Defendant's subpoena. (ECF No. 16 at 2). Second, Plaintiff's counsel denied Defendant's repeated requests to depose the Plaintiff. When Defendant moved to extend the discovery schedule so that

---

[2] Defendant admits Plaintiff's allegation that "the representative said she would mark the account as disputed but the Plaintiff still had to submit the dispute in writing along with documentation." (Answer ¶ 17). However, in its memorandum of law, Defendant says "that allegation is false." (Def's. Mem. 6).

[3] The complaint was also prepared by Edward Geller, Esq., P.C. in its capacity as "of counsel" to the Rephen Firm. (Compl. at 1).

[4] A discussion of the factual and legal frivolousness of Plaintiff's claims is found in Part II, *infra*.

[5] The complaint also alleges violation of 15 U.S.C. § 1692f for similar reasons. (Compl. ¶ 23). That statute provides that a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Plaintiff could be deposed at her convenience, Plaintiff's counsel offered to stipulate to dismissal with prejudice. Defendant rejected that offer and persisted in its effort to depose the Plaintiff. Plaintiff's counsel then advised Defendant that its client would not appear for any deposition. (*Id.*).

All this caused Magistrate Judge Bloom to question the nature of this case and Plaintiff's involvement in it. Judge Bloom ordered Plaintiff to appear at a status conference, to no avail. Finding this behavior "unacceptable," Judge Bloom then ordered an evidentiary hearing, requiring Plaintiff to appear with her attorneys, Harvey Rephen and Edward Geller, to explain her absence. (ECF No. 19 at 1–2).

At the evidentiary hearing, Plaintiff was surprised to learn that a federal case in her name was currently pending before this Court. (ECF No. 30, "Pl's. Test." 31:15–32:8). Her testimony revealed that she had no involvement in bringing the case, other than signing an initial retainer whose true purpose she did not understand. (*Id.* at 12:14–13:7). She was not aware of any discovery requests, or of interrogatories which were answered in her name. (*Id.* at 20:18–23). Plaintiff also admitted that she had no reason to dispute her debt. She simply fell behind on payments and wanted her credit repaired. (*Id.* at 19:21–20:23).

At or about the same time, Tawanda Frazier was deposed under oath in *Eisner v. Enhanced Recovery Company*, No. 17-CV-01240 (LDH) (ST), 2019 WL 5781119 (E.D.N.Y. Aug. 20, 2019), another case against Defendant in which the plaintiff was also represented by the Rephen Firm. (ECF No. 28-2, "Frazier Dep."). Frazier's *Eisner* testimony, which this Court accepts in accordance with Fed. R. Evid. 804(b)(1),[6] reveals her close working relationship with the Rephen

---

[6] Fed. R. Evid. 804(b)(1) permits testimony from an unavailable witness that was already "given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one," and "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Given that this is a motion to sanction Plaintiff's counsel, it is worth noting that the "party" against whom Frazier's testimony

3

Firm. (Frazier Dep. 34:11–39:7, 67:12–15). Following a script, Frazier would call debt collectors and ask them leading questions to elicit violations of the FDCPA. (*Id*. at 22:22–23:1, 36:2–36:5). She would dispute the account in every instance, irrespective of any justification to do so. (*Id*. at 26:3–20). Conversations containing purported violations were then funneled to the Rephen Firm. (*Id*. at 148:7–20).[7]

Shortly thereafter, the parties dismissed this case with prejudice on the condition that Defendant be permitted to move for attorneys' fees at a later time. (ECF No. 42). Defendant now makes such motion under 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1927 and the Court's inherent authority. (ECF Nos. 33, 43, 44).[8]

The facts recited above compel the following conclusion: that this case was presented by the Rephen Firm without its client's knowledge, alleging facts that Rephen Firm knew or should

---

is offered here is not the Plaintiff Imelda Alcivar, but Rephen Firm. (*See, e.g.*, Frazier Dep. 34:11–39:7). The Rephen Firm also represented the plaintiff in *Eisner* and so had ample opportunity to cross-examine Tawanda Frazier. Moreover, it is Frazier's own refusal to comply with this Court's subpoena that has made the introduction of her testimony in the *Eisner* case necessary. Frazier's testimony should not be unavailable to this Court on account of her noncompliance. *See* Fed. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.")

[7] Various email exchanges produced for *Eisner* reveal how Frazier was paid for such referrals, and that the Rephen Firm continued this relationship through the events leading up to this case. (ECF No. 35-8 at 000035).

[8] Defendant also moves for attorneys' fees and costs pursuant to Fed. R. Civ. P. 11, 37 and 54. Rules 11 and 54 are referenced nominally Defendant's briefs, and are not accompanied by any theory of relief in law or in fact. Defendant also does not make an adequate showing of how Rule 37(c)(2) sanctions would be justified. Subject to certain exceptions, "[i]f a party fails to admit what is requested under Rule 36 and *if the requesting party later proves* a *document to be genuine or the matter true*, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorneys' fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2) (emphasis added). Despite the emphasized language above, Defendant does not say which of Plaintiff's denials it ultimately proved to be true.

have known to be false. An award of attorneys' fees and costs is warranted under 15 U.S.C. § 1692k(a)(3), or in the alternative, 28 U.S.C. § 1927 and this Court's inherent authority.

## DISCUSSION

### I. Sanctions Under FDCPA § 1692k(a)(3)

"The FDCPA was enacted in response to a serious national problem of debt collection abuse."[9] *Islam v. Credit Control, LLC*, No. 16-CV-6883, 2017 WL 2788938, at *1 (E.D.N.Y. June 27, 2017) (internal quotation marks omitted). In furtherance of this objective, the statute "restricts the use of false or misleading representations and the harassment or abuse of any person in connection with collection of a debt, and broadly prohibits unfair and unconscionable debt collection practices." *Tchatchanachvili v. Prof'l Claims Bureau, Inc.*, No. 16-CV-3607 (ILG) (RER), 2017 WL 2987150, at *1 (E.D.N.Y. July 13, 2017) (internal quotation marks omitted). *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.

However, the FDCPA also provides a mechanism to sanction those who unfairly exploit these legal protections. "On a finding by the court that an [FDCPA action] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorneys' fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3); *see also Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989).

Section 1692k(a)(3) is silent as to whose bad faith and purpose to harass triggers an award of attorneys' fees. Thus far, district courts in this Circuit have only imposed such sanctions for

---

[9] Before its enactment, debt collectors would often resort to "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process" and other unscrupulous tactics. *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. 95-382, 2 (1977)).

plaintiff's misbehavior, not counsel's. *See, e.g.*, *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 57 (2d Cir. 2018) (sanctioning plaintiff under § 1692k(a)(3) while sanctioning plaintiff's counsel under a different statute).[10] However, the distinguishing features of this case merit an application of the statute consistent with reality. Given the context in which § 1692k(a)(3) appears, it is apparent why courts interpret the language "brought in bad faith and for the purpose of harassment" as governing the conduct of plaintiffs only. 15 U.S.C. §§ 1692k(a) and 1692(a)(1) provide that when a debt collector violates a person's rights under the FDCPA, "such person" may sue for damages. § 1692k(a)(2)(A) permits the court to award additional damages in an "action by an individual" on behalf of herself, as opposed to a class. These statutes govern actions brought by persons wronged under the FDCPA, not their lawyers.

But this interpretation does not contemplate the offensive behavior of the Rephen Firm. Imelda Alcivar did not bring this case. Her lawyers brought it without her participation, and in spite of the fact that she was not subjected to any "abusive debt collection practices by debt collectors" that the FDCPA was designed to eradicate. 15 U.S.C. § 1692(e); (ECF No. 39–2 at 15:8–16:6, 18:11–23, 20:15–22:15, 25:3–9). "Statutes must be so construed, if possible, that absurdity and mischief may be avoided." *In re Rouss*, 221 N.Y. 81, 91 (1917) (Cardozo, J.). The Court therefore finds that § 1692k(a)(3) relates to the behavior of plaintiff's counsel when it brings a case without its client's knowledge or involvement.

---

[10] Many district courts in this Circuit argue that "§ 1692k(a)(3) runs only against a party, not his counsel," and so a claim brought under that statute "requires proof of the plaintiff's bad faith, not just his counsel's." *Eisner*, 2019 WL 5781119, at *4. *See also Hasbrouck v. Arrow Fin. Servs. LLC*, No. 1:09–CV–748 (MAD/RFT), 2011 WL 1899250, at *7 (N.D.N.Y. May 19, 2011) (citing *Kahen–Kashani v. Nat'l Action Fin. Servs., Inc.*, No. 03CV828, 2004 WL 1040384, at *7 (W.D.N.Y. April 12, 2004)); *see also Spira v. Ashwood Fin., Inc.*, 358 F. Supp.2d 150, 161 (E.D.N.Y.2005). However, the Second Circuit has not adopted this rule.

The Court's interpretation is consistent with a stated purpose of the FDCPA: "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ." 15 U.S.C. § 1692(e). The legislative history behind the cost-shifting provision of § 1692k(a)(3) similarly reveals that Congress was motivated "to protect debt collectors from nuisance lawsuits." S. Rep. 95-382, at 5, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1700. This case is precisely the sort of nuisance lawsuit that provision was meant to discourage. The Rephen Firm must be held accountable, lest § 1692k(a)(3) become a *brutum fulmen*.

Notably, the defendant pays plaintiff's costs and reasonable attorneys' fees in a successful FDCPA action. *See* 15 U.S.C. § 1692k(a)(3). It is this precisely this "potential for recovering attorney's fees" which "can lead to nuisance lawsuits." Sean Hannon Williams, Comment, *Non-Prevailing Parties Who Bring Successful Actions Under Consumer Protection Statutes*, 71 U. Chi. L. Rev. 311, 315 (2004). "Congress partially addressed this issue in [§ 1692k(a)(3)] by authorizing courts to order plaintiffs to pay the defendant's fees under certain circumstances." *Id*. at 315.

The Rephen Firm brought this case without its client's knowledge or involvement, and therefore in bad faith. Furthermore, it did so with the purpose of extracting a monetary award from the Defendant, for a harm its client did not suffer.[11] Such behavior is not merely "harassment." It is, without making a "fortress out of the dictionary," *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945) (Hand, L., J.), *aff'd* 326 U.S. 404 (1945), more than annoyance or unwelcome conduct. It is nothing less than an attempt to transform a consumer protection statute into an ATM machine.

---

[11] The Rephen Firm's strategy was to use burdensome litigation to induce a quick settlement. When Defendant refused to settle and instead pushed for discovery, the Rephen Firm offered to dismiss the case rather than produce its client for deposition. (ECF No. 16 at 2). At no point did it show any interest—or, indeed, have any interest—in prosecuting this case to vindicate Plaintiff's rights.

In opposing Defendant's motion, Plaintiff's counsel urges this Court to consider the "chilling effect" sanctions would have on "consumers who have what they and their attorneys credibly believe to be valid grievances against debt collectors." (Pl's. Opp'n 12). The sanctions imposed by this Court will not have a chilling effect on honest consumers or advocates. The purpose of § 1692k(a)(3)'s cost shifting provision is to prevent nuisance lawsuits. A case more precisely tailored to violate this statute would be difficult to imagine.

## II. Sanctions Under § 1927 and the Court's Inherent Authority

An alternative basis for sanctions is 28 U.S.C. § 1927, which provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A district court also possesses "inherent power" to sanction Plaintiff's counsel. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). To sanction an attorney under this statutory or inherent authority, the court must find "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks omitted). For the reasons stated in Part I, *supra*, the bad faith requirement is already satisfied. The only question is whether the claims are without color.

A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."[12] *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980). Plaintiff had no reason to—and in fact did not—dispute that she owed the debt,

---

[12] The Rephen Firm cannot be said to have had any "reasonable belief" that this claim had factual support, given how, as noted *supra*, it brought this case without its client's knowledge or involvement.

8

and so both claims are entirely without factual support. During her testimony, she admitted to owing the debt in full. (Pl's. Test. 19:21–20:23). Frazier nonetheless called Defendant and filed a dispute with the account in order to manufacture a claim under the FDCPA. (Compl. ¶ 12; Frazier Dep. 26:3–20); *see Huebner*, 897 F.3d at 46 (awarding § 1927 sanctions, in part, because the plaintiff "tried to trick [the defendant] into violating the FDCPA during his initial call" and so the "suit was devoid of merit"), *cert. denied sub nom.*, 139 S. Ct. 1282 (2019).

In addition to having no factual support, Plaintiff's claims are entirely without legal support. The first claim is for violation of FDCPA § 1692e(8), which prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Defendant allegedly violated this statute by not reporting the dispute to the credit bureaus. (Compl. ¶ 20). Plaintiff's interpretation of § 1692e(8) defies a plain reading of the text, and she does not cite any cases to support it. *See Gollomp v. Spitzer*, 568 F.3d 355, 372 (2d Cir. 2009) (finding a claim frivolous where the plaintiff failed to cite any relevant cases in support of a specious legal theory). On the contrary, there is overwhelming consensus across the Second Circuit that § 1692e(8) "does not create an affirmative obligation on debt collectors to update credit bureaus on the status of a consumer's debt, but merely requires that if debt collectors choose to discuss a consumer's debt with a third party, they must inform that third party of the disputed nature of the debt." *Abreu v. Receivable Collection Servs.*, LLC, No. 18-CV-04103 (PKC) (LB), 2019 WL 1876722, at *6 (E.D.N.Y. Apr. 26, 2019); *see also Rogers v. Overton, Russell, Doerr & Donovan, LLP*, No. 1:16-cv-00784, 2017 WL 570811, at *3 (N.D.N.Y. Feb. 13, 2017) (noting that the "overwhelming weight of persuasive authority" did not find that § 1692e(8) imposed an affirmative duty on debt collectors to notify credit bureaus); *Rosado v. Enhanced Recovery Corp.*,

No. 17-CV-5920 (VSB), 2019 WL 4686521, at *5 (S.D.N.Y. Sept. 26, 2019); *Vernot v. Pinnacle Credit Servs., L.L.C.*, No. 16-CV-3163 (JFB) (SIL), 2017 WL 384327, at *1 n.2 (E.D.N.Y. Jan. 26, 2017) (holding that "the act of failing to inform a credit reporting agency of a change in status of a previously reported debt is not a violation of the FDCPA" because § 1692e(8) "does not impose an affirmative duty on debt collectors to update the status of each debt it has reported").

Plaintiff's second claim is also without legal support. It alleges violation of FDCPA § 1692e(10), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Defendant's request for a written dispute was, allegedly, a false representation about her right to dispute her debt orally. (Compl. ¶¶ 22–25). The question here is whether a supplemental request for a written dispute could negate prior acceptance of an oral dispute. In *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282 (2d Cir. 2013), the Second Circuit held that FDCPA § 1692(a)(3) included an implied right to dispute a debt orally.[13] But it also observed that a written dispute is necessary for plaintiffs to preserve certain other rights under §§ 1692(a)(4) and (5). *Hooks*, 717 F.3d at 285. The factual record is clear that Defendant's representative accepted the oral dispute, and that it notified Plaintiff of such acceptance over a month before the complaint was filed.[14] That the representative also requested supplemental written documentation does not change the fact that the oral dispute was accepted, especially because there are valid reasons why a written dispute would still be

---

[13] Plaintiff does not cite to *Hooks*, but rather to a similar Fourth Circuit case, *Clark v. Absolute Collection Serv. Inc*. 741 F.3d 487 (4th Cir. 2014), in support of this proposition. In *Clark*, the court found that the FDCPA "permits consumers to dispute the validity of a debt orally, and it does not impose a writing requirement." *Id.* at 491. The defendant in that case was therefore found to have violated the FDCPA by informing the plaintiff that must submit a dispute in writing. *Id.*

[14] By the express terms of the complaint, Defendant's representative accepted the oral dispute. (Compl. ¶ 17) (noting that the "representative said she would mark the account as disputed"). Defendant's business records also confirm it accepted the dispute. (ECF No. 34-1 at 5). Defendant also sent Plaintiff a letter confirming the dispute on March 3, 2017. (ECF No. 34-2 at 2).

helpful. To hold otherwise would force debt collectors into a catch-22: forfeit rights under § 1692(a)(3) by requesting a written dispute, or forfeit rights under §§ 1692(a)(4) and 1692(a)(5) by not requesting one. *Cf. Islam*, 2017 WL 2788938, at *3 (refusing to find an FDCPA violation where the plaintiff alleged "to have been damaged because the letter she received meticulously restate[d] the language of the statute").

Accordingly, an alternative basis for sanctions exists in 28 U.S.C. § 1927 and the Court's inherent power. The Court is mindful that "[s]anctions are a serious consequence that must be well-justified," *Eisner*, 2019 WL 5781119, at *5. But the Rephen Firm's behavior—filing a meritless case without its client's involvement—crosses that high bar.

## CONCLUSION

Defendant's motion for attorneys' fees is **GRANTED** in its entirety. In accordance with the billing records submitted by Defendant's counsel, the Court awards $33,916.84 in attorneys' fees and $2,769.14 in costs. (ECF No. 45-1).

SO ORDERED.

Dated: Brooklyn, New York
May 20, 2020

/s/
I. Leo Glasser					U.S.D.J.